Jon G. Shadinger Jr., Esq. (036232017)
Shadinger Law, LLC
2220 N. East Avenue
Vineland, NJ 08360
(609) 319-5399
js@shadingerlaw.com
*Attorney for Plaintiffs, Paul J. Gillespie, Jr., and Sandra J. Gillespie*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| PAUL J. GILLESPIE, JR., an incapacitated individual, by and through his attorney-in-fact and next friend, SANDRA J. GILLESPIE, and SANDRA J. GILLESPIE, individually,<br><br>Plaintiffs,<br><br>vs.<br><br>KOBE CORPORATION, a New Jersey Corporation,<br><br>Defendant. | Case No. 1:26-cv-13766<br><br>**COMPLAINT** |

## Introduction

Plaintiffs, PAUL J. GILLESPIE, JR., an incapacitated individual, by and through his attorney-in-fact and next friend, SANDRA J. GILLESPIE, and SANDRA J. GILLESPIE, individually (together, "Plaintiffs"), hereby sue the Defendant, KOBE CORPORATION, a New Jersey Corporation ("Defendant"), for injunctive relief, damages, attorney's fees, litigation expenses, and costs pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. ("ADA") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.* ("LAD").

**<u>The Parties</u>**

1. Plaintiff, PAUL J. GILLESPIE, JR. ("Mr. Gillespie"), is an individual over eighteen years of age who, due to the progression of his disease, is incapacitated and unable to bring this action on his own behalf. Mr. Gillespie resides at the New Jersey Veterans Memorial Home, 524 NW Boulevard, Vineland, NJ 08360.

2. Plaintiff, SANDRA J. GILLESPIE ("Mrs. Gillespie"), is an individual over eighteen years of age and is otherwise sui juris. Mrs. Gillespie has been married to Mr. Gillespie since December 16, 1992, and resides at 3016 Starlet Drive, Vineland, NJ 08360. Mrs. Gillespie brings this action both on Mr. Gillespie's behalf, as set forth below, and individually.

3. Mrs. Gillespie is Mr. Gillespie's attorney-in-fact pursuant to a General Durable Power of Attorney executed by Mr. Gillespie on November 9, 2023, while he was of sound mind, which authorizes her to assert and prosecute claims and litigation on his behalf. Mrs. Gillespie therefore brings this action on Mr. Gillespie's behalf as a like fiduciary pursuant to Fed. R. Civ. P. 17(c)(1) or, in the alternative, as his next friend pursuant to Fed. R. Civ. P. 17(c)(2).

4. Mr. Gillespie's progressive neurocognitive disorder renders him unable to understand the nature of this proceeding or to direct its prosecution, and he is thus unable to appear on his own behalf. Mrs. Gillespie – his wife of more than thirty years, who visits him several times per week and accompanies him on the outings giving rise to this action – is truly dedicated to Mr. Gillespie's best interests and has no interest adverse to his.[1]

5. Defendant, KOBE CORPORATION, owns and/or operates a place of public accommodation alleged by the Plaintiffs to be operating in violation of Title III of the ADA and

---

[1] See *Whitmore v. Arkansas*, 495 U.S. 149, 163–64 (1990).

the LAD.

**Jurisdiction and Venue**

6. Defendant's property/place of public accommodation, a restaurant known as The Tuckahoe Inn, is located at 1 Harbor Road, Marmora, NJ 08223 (the "Property").

7. Venue is properly located in the District of New Jersey because venue lies in the judicial district of the property situs. The Property is located in and does business within this judicial district.

8. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.[2]

9. Jurisdiction over the state law claim vests with this Court pursuant to 28 U.S.C. § 1367.

10. The Defendant owns, leases, leases to, and/or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA. The Defendant is thus required to comply with the obligations of the ADA.[3]

11. Mr. Gillespie is an individual with disabilities as defined by and pursuant to the ADA. Mr. Gillespie has a progressive neurocognitive disorder and a chronic respiratory condition and therefore has physical and mental impairments that substantially limit many of his major life activities[4] including, but not limited to, his ability to walk, stand, reach, lift, and think. Mr. Gillespie, at all times, requires the use of a wheelchair to ambulate.

---

[2] See also 28 U.S.C. §§ 2201 and 2202.

[3] 28 C.F.R. §§ 36.201(a) and 36.104.

[4] As defined by 28 C.F.R. § 36.105(b)(1)–(2).

**Factual Background**

12. Mr. Gillespie has resided at the New Jersey Veterans Memorial Home since 2024, when his disease progressed and Mrs. Gillespie could no longer provide around-the-clock care. Since that time Mrs. Gillespie has visited her husband several times per week and will often take him out of the facility for shopping, to restaurants, and to engage in other leisure activities.

13. Mr. Gillespie is able to stand momentarily, with assistance, to transfer to and from his wheelchair but requires the assisted use of a manual wheelchair to ambulate at all times; he does not possess the fine motor skills required to operate a motorized wheelchair on his own.

14. Because Mr. Gillespie is large in stature, and because Mrs. Gillespie must assist him in transferring to his wheelchair and push him wherever they go, architectural barriers such as sloped parking spaces, improper curb ramps, and improper entranceways make their outings dangerous for both of them. Other architectural features such as improper door handles or a lack of compliant access aisles are a common cause of frustration and often make their excursions unnecessarily arduous.

15. The barriers to access that Mr. and Mrs. Gillespie experience at differing places of public accommodation are often similar in nature. For example, they are repeatedly faced with sloping in parking lots, improper curb ramps, abrupt changes of level within paths of travel, and non-accessible restrooms. Mrs. Gillespie has become frustrated and disheartened by the repetitiveness of the complaints and requests for assistance she has been forced to make on his behalf; most often to no avail. Thus, Plaintiffs now seek redress through the ADA; as Congress intended.

16. Mr. and Mrs. Gillespie have visited the Property on many occasions over the years, with their last visit occurring on June 21, 2026. On this, and past occasions, they visited the Property as bona fide patrons with the intent to avail themselves of the goods and services offered to the

public within but found that the Property was rife with violations of the ADA – both in architecture and in policy.

17. Mr. Gillespie is a retired Navy veteran and, even in his current condition, views of the water still bring him visible joy. Thus, Mrs. Gillespie often takes him to places where they have fond memories and Mr. Gillespie can enjoy water or ocean views. They have visited the Property together many times and would like to continue to do so in the future.

18. Mr. and Mrs. Gillespie intend to return to the Property not only as patrons but also to monitor any progress made with respect to ADA compliance – with the sincere hope that any such visits are not made in vain.

19. Mr. and Mrs. Gillespie have personally encountered exposure to architectural barriers and otherwise harmful conditions that have endangered their safety at the Property.

20. The ADA has been law for over thirty (30) years and the Property remains non-compliant. Thus, Mr. and Mrs. Gillespie have actual notice and reasonable grounds to believe that they will continue to be subjected to discrimination by the Defendant.

21. Mr. and Mrs. Gillespie have a realistic, credible, existing, and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to the Property as described, but not necessarily limited to, the barriers personally encountered or observed which are listed in Paragraph 30 of this complaint.

22. Following any resolution of this matter Plaintiffs will ensure that the Defendant undertakes the remedial work that is required to cure existing violations, under the appropriate standard and in compliance with the ADA.

**COUNT I**
**Violation of Title III of the**
**Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.***

23. Plaintiffs reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

24. Enacted by overwhelming bipartisan consensus in 1990, and reinforced with the same consensus in 2008, the ADA reflects Congress's recognition that "discrimination" has precluded "many people with physical or mental disabilities" from "fully participat[ing] in all aspects of society."[5]

25. Congress's objective was "the elimination or reduction of physical and social structures" that thwart "equal-citizenship stature for persons with disabilities."[6]

26. Title III of the ADA provides a cause of action to "any person" with disabilities who personally encounters an unlawful accessibility barrier and is thus "subjected to discrimination on the basis of disability."[7]

27. The Defendant has discriminated against Mr. Gillespie, and other similarly situated mobility impaired persons, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by the ADA.

28. The Defendant has also discriminated against Mrs. Gillespie. Title III prohibits a public accommodation from excluding or otherwise denying equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual because of the known

---

[5] 42 U.S.C. § 12101(a)(1).

[6] *Tennessee v. Lane*, 541 U.S. 509, 536 (2004) (Ginsburg, J., concurring).

[7] 42 U.S.C. § 12188(a)(1).

disability of an individual with whom that individual is known to have a relationship or association.[8] Mrs. Gillespie is Mr. Gillespie's wife and caregiver, and she accompanies and assists him on each visit to the Property. The barriers described herein have denied Mrs. Gillespie the full and equal enjoyment of the Property and have endangered her own safety, as she has been forced to maneuver Mr. Gillespie's wheelchair across excessive slopes, unpaved routes, and steps without a compliant ramp.

29. A preliminary inspection of the Property has shown that violations of the ADA exist. That inspection, performed by Plaintiffs' expert, further revealed that the remediation of all violations/barriers listed in Paragraph 30 is both technically feasible and readily achievable.

30. The following are architectural barriers and violations of the ADA that Mr. and Mrs. Gillespie have either personally encountered or observed during their visits to the Property, including barriers that precluded them from accessing certain areas and features of the Property:

**Parking and Exterior Accessible Route**

a. The designated accessible parking area located at the Property is not maintained (faded striping and surface cracks), contains slopes steeper than 1:48 (2.08%) within the spaces, and lacks compliant access aisles; in violation of the ADAAG and Sections 302, 303, 402, and 502 of the 2010 ADA Standards, which require accessible car spaces at least 96 inches wide (van spaces 132 inches wide, or 96 inches wide with a 96-inch access aisle), access aisles at least 60 inches wide extending the full length of the spaces they serve, and parking spaces and access aisles with no slopes steeper than 1:48 (2.08%) in any direction. These barriers have presented Mr. and Mrs. Gillespie with a tipping hazard which has caused

[8] 42 U.S.C. § 12182(b)(1)(E).

frustration and could cause serious bodily harm to both of them; it is extremely difficult for Mrs. Gillespie to get Mr. Gillespie into his wheelchair without the benefit of a compliant access aisle.

b. The designated accessible parking area at the Property fails to provide a compliant accessible route from the parking area to the entrances and/or the accessible curb ramps; a violation of the ADAAG and Sections 402, 405, 406, 502, and 505 of the 2010 ADA Standards, which require accessible routes to have a running slope no steeper than 1:20 (5%), a cross slope no steeper than 1:48 (2.08%), a clear width of at least 36 inches, and no vertical changes in level greater than ¼ inch (with changes between ¼ inch and ½ inch beveled no steeper than 1:2); curb ramps to have a running slope no steeper than 1:12 (8.33%), flared sides no steeper than 1:10, and a level landing at least 36 inches long at the top; and ramps to have a running slope no steeper than 1:12 (8.33%), a cross slope no steeper than 1:48 (2.08%), a rise no greater than 30 inches for any run, level landings at least 60 inches long at the top and bottom of each run, and handrails with horizontal extensions where the rise exceeds 6 inches. The route is impeded by excessive sloping and cross-sloping, contains abrupt changes in level, and an improperly designed entrance ramp. The entrance ramp terminates directly into the vehicular drive aisle without a level landing at its base, and its handrails lack horizontal extensions at the bottom of the ramp run. When attempting to travel from the parking area to the entrance Mr. and Mrs. Gillespie have been impeded by these barriers, which present them with a further tipping hazard.

c. The exterior accessible route at the Property is impeded by cross slopes steeper than 1:48 (2.08%), abrupt changes in level greater than ¼ inch, and routes that are not paved; in violation of the ADAAG and Sections 302 and 402 of the 2010 ADA Standards, which

require exterior accessible routes to have firm, stable, and slip-resistant surfaces, a running slope no steeper than 1:20 (5%), a cross slope no steeper than 1:48 (2.08%), a clear width of at least 36 inches, and no vertical changes in level greater than ¼ inch (with changes between ¼ inch and ½ inch beveled no steeper than 1:2). Mr. and Mrs. Gillespie have been impeded by the excessive sloping and abrupt changes of level which present a tipping hazard, while the unpaved routes make it impossible for Mrs. Gillespie to push Mr. Gillespie's wheelchair. Due to the lack of an exterior accessible route – a further violation of the ADAAG and Sections 206.2.4 and 226 of the 2010 ADA Standards – Mr. Gillespie is precluded from dining at the exterior of the restaurant adjacent to the waterfront or even simply traveling to the waterfront to take in the view.

d. The route from the exterior patio dining area to the waterfront seating area is interrupted by a step with no ramp or other accessible means of passage; a violation of the ADAAG and Sections 206.2.4, 303, and 402 of the 2010 ADA Standards, which require changes in level greater than ½ inch along an accessible route to be ramped or served by an elevator or platform lift. This step has prevented Mr. Gillespie from reaching the waterfront seating area – the very view that draws him to the Property.

e. Upon information and belief, the sloped transitions at the entrances to the exterior patio dining area function as ramps but exceed a running slope of 1:12 (8.33%), lack level landings, and terminate in abrupt changes of level; a violation of the ADAAG and Sections 303 and 405 of the 2010 ADA Standards, which require ramps to have a running slope no steeper than 1:12 (8.33%), a cross slope no steeper than 1:48 (2.08%), level landings at least 60 inches long at the top and bottom of each run, and no changes in level other than the running and cross slopes. These conditions present Mr. and Mrs. Gillespie with a

tipping hazard when entering and exiting the patio.

f. The Property purports to provide three (3) designated accessible parking spaces but they are identified only by symbols painted on the pavement – none is identified by a vertical sign, and one space has only a portable sign on a weighted base – and they do not provide access aisles. As such, they are not currently compliant, and thus the Property fails to provide the requisite number of fully compliant accessible parking spaces and van-accessible parking spaces (as well as the requisite number of access aisles and van access aisles), a violation of the ADAAG and Sections 208, 216.5, and 502 of the 2010 ADA Standards, which require the number of accessible spaces set by Table 208.2 (one accessible space for 1–25 total spaces, two for 26–50, three for 51–75, four for 76–100, five for 101–150, and six for 151–200), with at least one of every six accessible spaces being van accessible, located on the shortest accessible route to an accessible entrance, and identified by signs mounted at least 60 inches above the ground to the bottom of the sign, with van spaces designated "van accessible." Upon information and belief, based on the total number of parking spaces at the Property, the Property should contain at least three accessible parking spaces with at least one being van-accessible coupled with a compliant van-accessible access aisle.

g. The Property fails to provide a compliant route to the adjacent existing street sidewalk. Mr. and Mrs. Gillespie have been precluded from accessing the Property from these points of entry due to the lack of an accessible route; a discriminatory omission which limits their options for transportation and is a violation of the ADAAG and Section 206.2.1 of the 2010 ADA Standards, which requires at least one accessible route within the site from public streets and sidewalks, public transportation stops, and accessible parking to an accessible

entrance.

**<u>Access to Goods and Services</u>**

h. The Property provides interior service elements which are mounted beyond the allowable maximum height (36 inches AFF for sales and service counters); in violation of the ADAAG and Sections 308 and 904 of the 2010 ADA Standards, which require operable parts to be located within 15 to 48 inches above the floor for an unobstructed reach, and a portion of each sales and service counter at least 36 inches long to be no higher than 36 inches above the floor. Due to their height or the presence of obstacles Mr. Gillespie cannot make use of these elements (countertops, work surfaces, etc.).

i. The Property fails to provide the requisite amount of accessible dining tables/accessible seating (5% of total seating) in both the interior and exterior dining areas; a violation of the ADAAG and Sections 226 and 902 of the 2010 ADA Standards, which require at least 5% of the seating spaces at dining surfaces to be accessible, with surfaces 28 to 34 inches above the floor, knee clearance at least 27 inches high and 30 inches wide, and a 30-inch by 48-inch clear floor space positioned for a forward approach. The lack of dining tables which allow for a full forward approach has prevented Mr. Gillespie from dining comfortably with his family.

j. The exterior bar serving the patio provides only high-top seating and lacks a lowered portion; a violation of the ADAAG and Sections 226 and 902 of the 2010 ADA Standards, which require a portion of the bar to be 28 to 34 inches above the floor with knee clearance at least 27 inches high and 30 inches wide for a forward approach. Due to this barrier Mr. Gillespie cannot sit at the bar with his family.

k. The interior accessible route within the restaurant is impeded by abrupt changes of level and the presence of steps/stairs, and, upon information and belief, the transitions between the flooring surfaces of the interior dining rooms contain changes in level greater than ¼ inch that are not beveled; a violation of the ADAAG and Sections 303 and 402 of the 2010 ADA Standards, which require changes in level greater than ½ inch along an accessible route to be ramped or served by an elevator or platform lift, and require a continuous accessible route with a clear width of at least 36 inches. During their last visit, Mrs. Gillespie had to navigate Mr. Gillespie's wheelchair down to the dining area backwards in order to access their table – a very dangerous endeavor. After they had completed dining, Mr. and Mrs. Gillespie had to wait an extended period of time for the staff to produce a makeshift wooden wedge/ramp in order for them to make their exit. The staff refused to assist Mrs. Gillespie in pulling Mr. Gillespie up the wedge/ramp and he would have fallen if another patron had not intervened to catch him. The Defendant's staff thus not only failed to provide an accessible route, but also refused to modify its practices to assist Mr. Gillespie – endangering both Mr. and Mrs. Gillespie.

**<u>Restrooms</u>**

l. The restrooms within the Property are inaccessible to Mr. Gillespie and contain architectural barriers to access including a lack of wheelchair maneuvering clearance, improperly mounted grab bars, incorrect toilet centerlines, improper identification signage, obstructions within the clear floor space, and, upon information and belief, a mirror mounted with the bottom of its reflecting surface higher than 40 inches above the floor; violations of the ADAAG and Sections 601, 603, and 604 of the 2010 ADA Standards,

which require a turning space (a 60-inch diameter circle or a T-shaped space) within the room, doors that do not swing into the clear floor space of any fixture (except in single-user rooms with a 30-inch by 48-inch space beyond the door swing), mirrors with the bottom of the reflecting surface no higher than 40 inches above the floor where located above a lavatory, and tactile signage on the latch side of the door between 48 and 60 inches above the floor. These barriers have prevented Mr. Gillespie from freely using the restrooms.

m. The restrooms provide dispensers (soap, paper towel, toilet tissue, seat cover, etc.) which are mounted improperly outside of prescribed reach ranges; a violation of the ADAAG and Section 308 of the 2010 ADA Standards, which requires dispensers and other operable parts to be mounted between 15 and 48 inches above the floor; Section 604.7 further requires the toilet paper dispenser to be located 7 to 9 inches in front of the water closet (measured to the centerline of the dispenser) with its outlet 15 to 48 inches above the floor. Due to the improper locations Mr. Gillespie could not access the dispensers.

n. The one lavatory provided with knee space is rendered unusable by a trash receptacle and toilet brush stored beneath it – a policy failure obstructing the required clear floor space and knee clearance – and its water supply and drain pipes are exposed and uninsulated; the remaining lavatory is set in a solid vanity cabinet with no knee clearance at all; a violation of the ADAAG and Sections 305 and 606 of the 2010 ADA Standards, which require a 30-inch by 48-inch clear floor space positioned for a forward approach, the front of the lavatory rim or counter to be no higher than 34 inches above the floor, knee clearance at least 27 inches high and toe clearance at least 9 inches high beneath it, and exposed water supply and drain pipes to be insulated or otherwise configured to protect against contact.

Due to these barriers Mr. Gillespie could not access the sinks.

o. The water closets within the restrooms lack a rear-wall grab bar entirely, provide a side-wall grab bar that is not properly located, contain improper centerlines for the toilets, contain improperly mounted flush controls, lack self-closing doors and coat hooks, and completely lack wheelchair maneuvering clearance/clear floor space; a violation of the ADAAG and Section 604 of the 2010 ADA Standards, which requires the water closet centerline to be 16 to 18 inches from the side wall or partition, a clearance around the water closet at least 60 inches wide and 56 inches deep (59 inches for floor-mounted units), a seat height of 17 to 19 inches, a side-wall grab bar at least 42 inches long located no more than 12 inches from the rear wall and extending at least 54 inches from it, a rear-wall grab bar at least 36 inches long extending at least 12 inches on one side of the centerline and 24 inches on the transfer side, grab bars mounted 33 to 36 inches above the floor, flush controls on the open side of the water closet, and wheelchair accessible compartments at least 60 inches wide with self-closing doors; Section 604.8.3 further requires coat hooks within toilet compartments to be located within the reach ranges of Section 308. Due to the overall lack of accessibility Mr. Gillespie could not access the water closets/toilets.

p. Entering and exiting the restrooms is impeded by a lack of latch-side wheelchair maneuvering clearance, improper door handles, improper identification signage, and, upon information and belief, a clear opening width of less than 32 inches; violations of the ADAAG and Section 404 of the 2010 ADA Standards, which requires level maneuvering clearance at the door – including at least 18 inches beyond the latch side on the pull side for a front approach – a clear opening width of at least 32 inches, and hardware operable without tight grasping, pinching, or twisting of the wrist (round knobs do not comply)

mounted 34 to 48 inches above the floor. Due to the lack of latch-side clearance to exit and the improper door hardware (round door knobs) Mr. and Mrs. Gillespie could not exit the restrooms without additional assistance.

q. The only restrooms serving the exterior patio and waterfront areas are located within a trailer reachable solely by a set of portable metal steps over an unpaved gravel route, and are completely inaccessible to Mr. Gillespie; further, the directional sign leading patrons to the trailer does not identify the location of an accessible restroom. These are violations of the ADAAG and Sections 206.2.4, 213, 216.8, and 302 of the 2010 ADA Standards, which require an accessible route to each toilet room provided, firm, stable, and slip-resistant surfaces, and, where a toilet room does not comply, directional signs indicating the location of the nearest accessible toilet room. Due to these barriers Mr. Gillespie could not reach or use the restrooms serving the exterior areas of the Property.

31. Each of the foregoing violations is also a violation of the ADA Standards for Accessible Design, originally published on July 26, 1991 and republished as Appendix D to 28 C.F.R. part 36 ("1991 Standards"); the "2004 ADAAG," which refers to ADA Chapter 1, ADA Chapter 2, and Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified at 36 C.F.R. § 1191, appendix B and D ("ADAAG"); and the 2010 Standards for Accessible Design ("2010 ADA Standards"), as promulgated by the U.S. Department of Justice.[9]

32. The discriminatory violations described in Paragraph 30 may not be an exhaustive list of the ADA violations that exist at the Property, but they are the result of a preliminary inspection

[9] 28 C.F.R. § 36.104.

conducted by the Plaintiffs (and their expert) and include all those personally encountered or observed by Mr. and Mrs. Gillespie.

33. Given the violations discovered and listed herein, Plaintiffs allege, on information and belief, that there are other violations/barriers at the Property which relate to Mr. Gillespie's disability. Thus, Plaintiffs require thorough inspection of the Property in order to photograph and measure the architectural barriers which exist at the Property in violation of the ADA. Once said inspection has been completed, Plaintiffs may amend this complaint in order to provide proper notice to the Defendant regarding the full scope of this action.[10]

34. Mr. Gillespie, and other mobility impaired persons, will continue to suffer discrimination, injury and damage without the immediate relief provided for by the ADA and requested herein.

35. Defendant has discriminated against Mr. Gillespie, and other mobility impaired persons, by denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of the ADA.

36. Defendant continues to discriminate against Mr. Gillespie, and other mobility impaired persons, by failing to remove architectural barriers, and communication barriers that are structural in nature.[11]

37. Defendant continues to discriminate against Mr. Gillespie, and other mobility impaired

---

[10] See *Doran v. 7-Eleven, Inc.,* 524 F.3d 1034, 1047 (9th Cir. 2008) *(holding* that once a plaintiff encounters one barrier at a site, they can sue to have all barriers that relate to their disability removed regardless of whether or not they personally encountered them); accord *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184 (2d Cir. 2013) (per curiam) (plaintiff who used a wheelchair had standing to challenge barriers at a restaurant related to his disability that he had not yet encountered); *Steger v. Franco, Inc.*, 228 F.3d 889 (8th Cir. 2000) (plaintiff who encountered a barrier had standing to challenge other barriers at the property related to his disability).

[11] 42 U.S.C. § 12182(b)(2)(A)(iv).

persons, by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities – including, as described above, by refusing to assist Mr. Gillespie in exiting the restaurant over a makeshift ramp, and by storing a trash receptacle and toilet brush beneath the restroom's only lavatory with knee space.[12]

38. Defendant continues to discriminate against Mr. Gillespie, and other mobility impaired persons, by failing to undertake such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.[13]

39. Pursuant to 28 C.F.R. § 36.304(a) the Defendant shall remove all architectural barriers, including communication barriers that are structural in nature, where such removal is readily achievable; this duty began at the outset of the ADA for all existing facilities (regardless of age) and remains continuous and ongoing.

40. The ADA contains no "grandfather" provision. Title III's barrier-removal obligation applies to every existing place of public accommodation without regard to when it was constructed,[14] and the "grandfather" provisions often found in local building codes do not exempt a public accommodation from its obligations under the ADA.[15] A facility's age bears only on which standard governs a given element, not on whether the ADA applies; the sole protection the regulations afford existing elements is the limited safe harbor of 28 C.F.R. § 36.304(d)(2), which

---

[12] 42 U.S.C. § 12182(b)(2)(A)(ii).

[13] 42 U.S.C. § 12182(b)(2)(A)(iii).

[14] 42 U.S.C. § 12182(b)(2)(A)(iv); 28 C.F.R. § 36.304(a).

[15] U.S. Dep't of Justice, Civil Rights Div., *ADA Update: A Primer for Small Business* (Mar. 2011).

applies only to elements that already comply with the 1991 Standards.

41. If the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993,[16] then the Defendant's facility must be readily accessible to and usable by individuals with disabilities in accordance with the 1991 Standards or, for construction commenced on or after March 15, 2012, the 2010 Standards.[17]

42. Pursuant to 28 C.F.R. § 36.402(a)(1) "any alteration" made to the Property after January 26, 1992, must have been made so as to ensure that, to the maximum extent feasible, the altered portions of the Property are readily accessible to and usable by individuals with disabilities, including individuals, like Mr. Gillespie, who use wheelchairs. An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.[18] Discovery in this matter will reveal if and when such alterations have taken place at the Property, and to what corresponding technical and scoping specification the Defendant must meet/exceed to bring the Property into compliance with the ADA.

43. Upon information and belief, the Property was reconstructed in 1963 and has been renovated and altered on numerous occasions since January 26, 1992. Each such alteration was required to be made readily accessible to and usable by individuals with disabilities to the maximum extent feasible,[19] and each alteration affecting an area containing a primary function – including the dining areas – was further required to provide an accessible path of travel to the altered area, including the restrooms serving it, to the extent the cost of doing so is not

---

[16] As defined by 28 C.F.R. § 36.401(a)(2).
[17] 28 C.F.R. § 36.406(a).
[18] 28 C.F.R. § 36.402(a)(2).
[19] 28 C.F.R. § 36.402.

disproportionate to the cost of the overall alteration.[20]

44. 28 C.F.R. § 36.304(d)(2) controls with respect to the corresponding technical and scoping specification to which each element that has not been altered must comply with or be modified to meet. Those are defined as follows:

a. Elements that have not been altered on or after March 15, 2012, and that comply with the corresponding technical and scoping specifications in the 1991 Standards, are not required to be modified to comply with the 2010 Standards.

b. Before March 15, 2012, elements that did not comply with the 1991 Standards were required to be modified to comply with either the 1991 Standards or the 2010 Standards.

c. On or after March 15, 2012, elements that do not comply with the 1991 Standards must be modified to comply with the 2010 Standards.

45. Plaintiffs are not required to notify the Defendant of its violation of the ADA nor its ongoing discrimination prior to the filing of this action. To that end, Mrs. Gillespie has found that voicing concerns to employees and management, and requesting assistance on Mr. Gillespie's behalf, is futile. Plaintiffs are now resolved to the fact that the only way to spur action and achieve the accessibility required under the law is to file matters, like this one, and pray for the relief contained herein.

46. Plaintiffs are without an adequate remedy at law and are suffering irreparable harm, including injury consisting of emotional distress, mental anguish, suffering, and humiliation. Considering the balance of hardships between the Plaintiffs and the Defendant, a remedy in equity is warranted. The public interest would not be disserved by the issuance of a permanent injunction.

---

[20] 28 C.F.R. § 36.403.

47. Pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505, Plaintiffs are entitled to recovery of attorney's fees, costs, and litigation expenses from the Defendant.

48. Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Plaintiffs injunctive relief, including an order to require the Defendant to alter the Property and make such readily accessible to and usable by Mr. Gillespie and all other persons with disabilities as defined by the ADA; or by closing the Property until such time as the Defendant cures all violations of the ADA.[21]

**WHEREFORE**, Plaintiffs respectfully demand:

a. The Court issue a Declaratory Judgment determining that the Defendant is in violation of Title III of the ADA.

b. Injunctive relief against the Defendant including an order to (1) cure all ADA violations existing at the Property listed herein and those later found through discovery within the next six months; (2) make the Property accessible to and usable by individuals with disabilities; and (3) require the Defendant to make reasonable modifications in policies, practices or procedures, to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c. An Order requiring the Defendant to cease its discriminatory practices and to maintain the requisite accessible features at the Property – as required by the ADA.

d. An award of attorney's fees, costs, and litigation expenses (including expert fees and costs) pursuant to 42 U.S.C. § 12205.

[21] 42 U.S.C. § 12188(b)(2).

e. Such other relief as the Court deems just and proper and is allowable under Title III of the ADA.

**COUNT II**
**Violation of New Jersey Law**
**Against Discrimination, N.J.S.A. 10:5-1 *et seq.***

49. Plaintiff Paul J. Gillespie, Jr., by and through Mrs. Gillespie, realleges and incorporates, by reference, all of the allegations contained in all of the preceding paragraphs.

50. The Property is a place of public accommodation as defined by N.J.S.A. 10:5-5.

51. New Jersey law provides that all persons shall have the opportunity to obtain all the accommodations, advantages, facilities, and privileges of any public place of accommodation without discrimination on the basis of disability. This opportunity is recognized and declared to be a civil right.[22]

52. As set forth above, the Defendant has violated the LAD by denying Mr. Gillespie, and all other mobility impaired persons, the full and equal enjoyment of the goods, facilities, services, and accommodations available at the Property.

53. As a result of the aforementioned discrimination through repeated exposure to architectural barriers and other harmful conditions, Mr. Gillespie has sustained injury in the form of emotional distress, mental anguish, dignitary harm, and humiliation, in violation of the LAD.

**WHEREFORE**, Plaintiff Paul J. Gillespie, Jr. respectfully demands:

a. That this Court assume jurisdiction.

b. The Court issue a Declaratory Judgment determining that the Defendant is in violation of the LAD.

[22] N.J.S.A. 10:5-4.

c. An injunction ordering Defendant to immediately comply with the LAD by removing all architectural barriers listed herein or later found through discovery.

d. A monetary award consisting of the damages sustained by Mr. Gillespie – to the maximum extent permitted – attorney's fees, and litigation expenses, including expert fees and costs.

e. An order requiring the Defendant to cease discriminatory practices and to maintain the requisite accessible features at the Property – as required by the LAD.

f. Other relief that this Court deems just and proper and is allowable under the LAD.

Respectfully submitted on this 22nd day of October 2026,

*/s/ Jon G. Shadinger Jr.*
Jon G. Shadinger Jr., Esq.
Shadinger Law, LLC
2220 N. East Avenue
Vineland, NJ 08360
(609) 319-5399
js@shadingerlaw.com
*Attorney for Plaintiffs, Paul J. Gillespie, Jr., and Sandra J. Gillespie*